DURATRON PRODUCTS CORPORATION, Respondent, *v.* PHILIP FREEMAN Co., INC., Appellant.

Supreme Court, Appellate Term, First Department, January 17, 1929.

*David Haar* [*H. H. Nordlinger* of counsel], for the appellant.

*Hovell, McChesney & Clarkson* [*Sidney A. Clarkson* of counsel], for the respondent.

BIJUR, J. Appeal by defendant from a judgment dismissing its counterclaim after a trial by a judge without a jury. Plaintiff and defendant by contract embodied in a letter of June 4, 1926 (as interpreted in subsequent correspondence), agreed that defendant should be the exclusive sales agent of plaintiff's radio "tubes," and defendant agreed to handle no others. Plaintiff's representative was one Kennedy. Both parties had some interest in watching the operations of a rival manufacturer who made "Qualitron" tubes and they had had conversations and correspondence in respect thereto. Freeman had made loans to the Qualitron people and had discussed that subject with Kennedy. In August or September of 1926 Kennedy learned from Freeman that he had made a further loan to the Qualitron people and had accepted as collateral 3,000 Qualitron tubes. Kennedy, according to his testimony, then said to Freeman: "Don't you purchase those tubes. It will be a breach of contract if you buy those tubes." Freeman denies this. Kennedy further testified that on November twelfth or thirteenth he was told by Freeman that he had bought or taken over these tubes in satisfaction of the loan and had sold 100 of them in Buffalo and a few around the city of New York, and that that they were moving slowly, and that he (Kennedy) replied: "It was a good buy." At a previous trial Kennedy had testified that he did not say a word when he learned of Freeman's having taken over these 3,000 tubes in payment of the debt. I emphasize these answers because to my mind they indicate almost conclusively that Kennedy's version of the previous conversation is quite inconsistent with his testimony in respect of the second, whichever of his two versions be accepted. I have no doubt that Kennedy did not object to the Qualitron loan when he first heard of it, but on

the contrary treated it as a matter wholly indifferent to himself and advised Freeman, as Freeman testifies, in respect to the best method of securing repayment of the loan. Kennedy says that he reported the matter immediately to his corporation, the plaintiff. The latter wrote defendant on November twenty-seventh, two weeks later: " We are instructed by Mr. Kennedy in a telegram from Chicago to advise you that by the purchase of Qualitron tubes you have violated the letter and intent of the working agreement between us." On November thirteenth Kennedy went to St. Louis, and on the fifteenth made arrangements with Freeman's representative or distributor there to represent the plaintiff thereafter, and on the nineteenth or twentieth made a similar arrangement with another of Freeman's representatives in Kansas City. While in St. Louis he wrote a letter to some local concern to assist defendant in collecting an unpaid bill. Kennedy did not return to New York until about the beginning of December, and did not communicate with defendant in the meantime.

On this state of facts the learned judge below has found that the defendant breached the contract " by purchasing and offering for sale 3,000 Qualitron tubes. * * * That the breach was substantial and warranted rescission by the plaintiff, which action was taken within a reasonable time after the breach was discovered."

Plaintiff's exact contention, it will be seen, was not sustained by the learned judge, namely, that the purchase of the tubes constituted a breach of the contract, but that the purchase *and offering them for sale* constituted the breach. I mention this because on the substantiality of the breach it is to be noted that defendant had *sold* only 100 Qualitron tubes, as against the 3,000 or more tubes which it had purchased from plaintiff under their contract during the preceding five months of its term. In my opinion the question discussed in the briefs, namely, whether plaintiff rescinded the contract within a reasonable time after learning of the " breach " (even assuming that there were such an obligation imposed upon it) is quite immaterial, particularly as it has not been shown that it did any affirmative act in carrying out the contract in the meantime. On the other hand, plaintiff's attitude toward defendant's entire relation with the Qualitron Company is highly significant of the fact that the taking over of these tubes and selling some 100 or more of them or even offering all of them for sale was really regarded with utter indifference by plaintiff and that it was not and should not be treated as a breach of the contract. When to this is added the fact that plaintiff refrained from communicating to defendant its attempted rescission of the entire agreement until

after it had made satisfactory arrangements with two of defendant's most important distributors, there remains little doubt that the breach, if any, was not substantial and was never regarded by the plaintiff as such until it attempted to avail itself thereof as an excuse for further non-performance.

Judgment reversed and a new trial ordered, with costs to appellant to abide the event.

All concur; present, BIJUR, LEVY and CRAIN, JJ.